HENRY M. LIBBY V. STATE OF NEBRASKA, EX REL. LOUIS M. DAVIS.

FILED NOVEMBER 9, 1899.    NO. 10,861.

1. **Road Tax: Power of County Board.**  By section 77, article 1, chapter 77, Compiled Statutes, 1899, the power conferred on the board of county commissioners to levy a road tax is limited to the levy of such tax for county purposes.

2. ———: COUNTY FUNDS. The money raised by the levy of such tax for county purposes belongs to the county road fund, to be expended under the direction of the county authorities, unless otherwise provided by statute.

3. ———: ———: MUNICIPAL CORPORATIONS. Section 84, article 1, chapter 14, Compiled Statutes, 1899, which provides that the county treasurer "shall pay over, on demand, to the treasurer of any city or village, all money received by him arising from taxes levied belonging to such city or village," is not applicable to moneys arising from the levy of road tax on property situate within the corporate limits of such city or village.

4. ———: ROAD DISTRICTS: MUNICIPAL CORPORATIONS. Incorporated municipalities are road districts within the meaning of section 76 of the road law (Compiled Statutes, 1899, ch. 78), and as such are, except where otherwise provided, entitled to one-half the moneys arising from the road tax levied by the county commissioners upon the property situate within their limits.

5. ———: ———: ———: MANDAMUS. Where it appears that a city of the second class, having less than five thousand inhabitants, has received from the treasurer of the county one-half the moneys collected on the county levy of a road tax on property situate within the limits of such city, an action of mandamus will not lie, on the relation of such city, to compel such county treasurer to pay over the remainder of the moneys so collected.

ERROR from the district court of Johnson county. Tried below before LETTON, J. *Reversed.*

*M. B. C. True,* for plaintiff in error.

*William H. Jennings, contra.*

SULLIVAN, J.

The city of Tecumseh is a city of the second class having less than five thousand inhabitants. It is the county seat of Johnson county, which has not yet adopted the township system of government. The controversy now before us for determination is practically between these two municipal bodies. The action was instituted by Louis M. Davis, as treasurer of the city, to obtain a peremptory writ of mandamus commanding the respondent Libby to account for and turn over certain money held by the latter as treasurer of the county. The money

in question is the product of road taxes levied by the county commissioners against property situate within the corporate limits of the city. The trial court decided that all such taxes are city revenue, and gave judgment accordingly. The correctness of this conclusion is the only question raised by the petition in error, or discussed in the briefs of counsel. The authority of the county board to levy a road tax on city property is claimed under section 77 of the revenue act. See Compiled Statutes, 1899, ch. 77, art. 1, sec. 77. The pertinent provisions of the section are here set out: "On the last day of sitting as a board of equalization the county board shall levy the necessary taxes for the current year, including all county, township, city, school district, precinct, village, and other taxes required by law to be certified to the county clerk and levied by the county board; * * * the rate of tax for county purposes shall not exceed one dollar and fifty cents on the hundred dollars valuation, * * * and shall be as follows: * * * In counties not under township organization, for ordinary county revenue, * * * not more than nine mills on the dollar valuation; for roads, not more than five mills on the dollar valuation; for county bridge fund, not more than four mills on the dollar valuation; for county sinking fund, not more than three mills on the dollar valuation, and labor tax as provided in the following section." From the language quoted it is quite clear that the power conferred upon the commissioners to levy a road tax is limited to the levy of such a tax for county purposes. That a tax laid under this power extends to, and is a charge against, all the property in the county, is a conclusion resulting from both legislative and judicial constructions of the statute. The act of March 1, 1883, providing for the organization of cities of the second class having more than 5,000 inhabitants, declares that all the moneys arising from the levy of road tax against property in cities of the class to which the act relates shall be expended only upon the streets of such cities or

within three miles thereof. The case of *State v. Graham*, 16 Nebr., 74, involved the right of the city of Lincoln to road taxes levied against property situate within its borders. The court sustained the city's claim and awarded it the fund in controversy. Now it seems entirely clear, on principle, that money raised by the levy of a tax for county purposes belongs to the county road fund, and is to be expended under the direction of the county authorities, unless some statute otherwise provides. It would be eminently just, of course, to award a city or village the entire road tax paid upon property situate within its. limits; but the matter is not to be decided upon equitable considerations, but by seeking out the legislative intent. In support of his contention that the entire fund produced by the tax belongs to the city, the relator refers us to section 84, article 1, chapter 14, Compiled Statutes, 1899, which reads as follows: "The treasurer of the county shall pay over on demand, to the treasurer of any city or village, all money received by him arising from taxes belonging to such city or village, together with all money collected as a tax on dogs from the residents of such corporation, for the use of the general fund therein." This provision of the charter would be applicable and of controlling influence if the money in dispute had arisen "from taxes levied belonging to such city"; but since the levy, according to the plain terms of the revenue law, was made for county purposes, the section is, we think, without relevancy. And such evidently was the view taken by the legislature of 1883, for, while it incorporated *verbatim* the section quoted into the charter of cities of the second class having more than 5,000 inhabitants, it added, in order to effectuate its policy, a further provision directing the payment to such cities of all moneys arising- from the levy of road tax on property situate therein. The only authority, so far as we know, for paying any portion of the road tax into the treasury of cities or villages is found in section 76 of the road law. See Compiled Statutes, 1899, ch. 78,

sec. 76. It provides that half the moneys paid by the road districts in discharge of road tax shall constitute a county road fund, to be expended for the general benefit of the county in the improvement of its highways; and that the other half of such moneys shall constitute a district road fund, to be distributed among the road districts in proportion to the amounts paid by them severally into the county treasury. We have been referred to many other provisions supposed to have some bearing upon the question, but our examination of them has been without profit. In an earnest endeavor to discover the will of the lawmaking body, we have followed the learned counsel for respondent into a jungle of enactments, ancient and modern, among which the mind loses itself and can find no way out. The truth of the matter is that no very tangible evidence of the legislative purpose touching the disposition of money like that here in dispute is anywhere discernible. And yet we think there is enough to warrant us in holding that section 76 of the road law is applicable to incorporated municipalities, and that they are to be regarded as road districts within the meaning of that section. It is true that section 53 of the road law, which confers power on county commissioners to divide counties into road districts, expressly excepts incorporated territory from the terms of the grant. But it must be remembered that was done in view of the fact that cities and villages were invested, by other laws, with complete and exclusive jurisdiction over their streets. Municipal corporations, being possessed of ample resources to maintain their own highways, and being charged with the duty of their maintenance, are practically road districts created by the acts under which they were organized. It is, we think, a just and reasonable exposition of section 76 of the road law to hold that the legislature intended thereby to deal with and dispose of the entire product of the road tax. A construction that would leave the portion of the tax collected in

cities and villages undisposed of in the county treasury would be unreasonable and palpably unjust. Our conclusion is that the city of Tecumseh having already received one-half the road tax paid upon property within its limits, the balance belongs to the county road fund of Johnson county. The judgment of the district court is therefore

REVERSED.