CITY OF CHADRON, APPELLEE, V. DAWES COUNTY, APPELLANT.

FILED NOVEMBER 6, 1908. No. 15,248.

1. **Highways**: ROAD DISTRICTS: DISTRIBUTION OF TAXES. Cities of the second class and villages were road districts within the meaning of section 76 of the road law (Comp. St. 1899, ch. 78) as it existed prior to the amendment of 1901, and as such were, except where otherwise provided, entitled to one-half of the moneys arising from the road tax levied by the county commissioners upon the property situated within their limits.

2. ———: ———: TAXES: COUNTY A TRUSTEE. And where a county has collected a road tax levied upon property within the limits of such city or village, it holds one-half of the amount so collected as a public trust, and is charged with the continuing duty to pay the same over to such city or village.

3. ———: ———: ———: ———. In such a case, as between the county and city or village, the county does not hold such collections in its own right, but the possession of the one is the possession of the other. The possession of the county is precarious, and not *animo domini;* and being trustee it cannot acquire the trust fund by lapse of time.

4. ———: ———: ———: LIABILITY OF COUNTY. And in such a case, where the county appropriates that portion of the road tax which should be paid to said city or village, by transferring it to its general fund, it thereby becomes liable to such city or village for the amount so appropriated, and may be proceeded against directly; and the fact that the county treasurer and his bondsmen may also be liable therefor is immaterial.

APPEAL from the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Justin E. Porter,* for appellant.

*D. B. Jenckes* and *A. W. Crites, contra.*

FAWCETT, C.

Plaintiff is chartered under the provisions of the statute for the organization of cities and villages, and is situate within the territorial boundaries of the defendant, the county of Dawes. Defendant levied a road tax upon the property situated within the boundaries of plaintiff city, in common with all the other property in said county, for the years 1886 to 1895 and 1897 to 1904, both inclusive, under which it collected the sum of $7,514.98, no part of which was paid over to the city by the county. On the 1st day of June, 1906, plaintiff filed a claim with the county board of defendant county for one-half the amount so collected. This claim was afterwards, and on the 29th day of June, allowed for the sum of $571.75, which was one-half of the amount of the road taxes collected from the property within the boundaries of said city during the four years next preceding the filing of the claim. The remainder of the claim was disallowed. From this decision of the county board the city appealed to the district court, where a trial resulted in a judgment in favor of the plaintiff city for $3,757.49, being one-half of the entire amount of road taxes collected from property within the city limits since 1886. Defendant appeals.

1. Defendant's first contention is that no statute required the payment of one-half, or any other portion, of said road tax to the city. Plaintiff relies upon our construction of the statute in *Libby v. State,* 59 Neb. 264. In that case the city of Tecumseh sought a peremptory writ of mandamus requiring the treasurer of Johnson county to pay to the city treasurer the proceeds of road

taxes levied by the county commissioners against property situated within the corporate limits of the city. It was contended by the plaintiff that section 84, art. I, ch. 14, Comp. St. 1907, which provides that the county treasurer "shall pay over on demand, to the treasurer of any city or village, all money received by him arising from taxes levied belonging to such city or village," was applicable to moneys arising from the levy of a road tax on property situated within the limits of such city or village. This construction of the statute was not adopted. It was held that that section did not apply to moneys arising from the levy of a road tax by the county authorities upon property situated within the limits of the city or village. It was, however, held that incorporated municipalities are road districts within the meaning of section 76 of the road law (Comp. St. 1899, ch. 78) and as such are, except where otherwise provided, entitled to one-half the moneys arising from the road tax levied by the county commissioners upon the property within their limits. This part of the decision is vigorously assailed by the defendant upon the ground that it was not necessary to a decision of the case then before the court, and is not therefore to be regarded as authority. It is true that in that case the city had received one-half of the road tax, which had been voluntarily paid over by the county treasurer, and its right thereto does not seem to have been contested. Under these circumstances we should not feel ourselves compelled to follow the opinion upon this point in the case, if unconvinced by its argument or dissatisfied with its conclusion. But, considering the question as a new one, we are constrained to reach the same determination. Cities and villages are invested with jurisdiction over their streets, and are charged with the duty of maintaining their own highways, and are therefore road districts by the just and reasonable construction of section 76 of the road law. Any other interpretation would leave one-half of the road tax collected in cities and villages undisposed of in the county treasury,

and would violate the principle that all laws should be so construed, if possible, as to avoid an unjust or absurd conclusion. We are therefore satisfied that the plaintiff was entitled to one-half of the road tax collected within its boundaries.

2. The statute of limitations is interposed as a defense. It is conceded that, if this defense can be made in a case of this kind, the defendant has allowed plaintiff all that it was legally entitled to demand. Under the law in force at the times set out, the county collected all of the road taxes. All of the taxes collected outside of an incorporated city and one-half of the tax levied and collected upon property within the corporate limits of a city could properly be held and disbursed by the county, but the other one-half of the taxes collected upon property within the corporate limits of a city belonged to the city, and it would be the duty of the county to pay such money over to the city. Plaintiff and defendant were therefore jointly interested in that portion of the fund derived from the levy upon property within the corporate limits of the plaintiff; and, being so jointly interested, when the fund came into the possession of the county, it held one-half of it in trust for the city. The fund had been raised in the exercise of a governmental function, for governmental purposes, and, we think, was held in a governmental capacity. But whether so or not, it seems clear to us that the county held that portion belonging to the city as a public trust; that it was the continuing duty of the county to faithfully execute the trust by paying over the money, and that the statute of limitations does not apply.

The opinion by Mr. Chief Justice Fuller, in *New Orleans v. Fisher*, 180 U. S. 185, very clearly states the law on this point. In that case Mrs. Fisher and others had obtained judgments against the board of school directors, a corporation created by the state of Louisiana, within the city of New Orleans, which judgments were payable out of the school taxes levied and collected by

the city of New Orleans. The bill, which was filed May 11, 1896, recited: "That the board of school directors to whom the city of New Orleans should account have refused to demand such an account and will continue so to do and your oratrix would be left without a remedy." The prayer was that the city school board and the city answer, and give a full, fair and perfect account of all the school taxes collected by the city of New Orleans for the years 1873 to 1878, inclusive. One of the defenses interposed was the statute of limitations. The case was referred to a master, who reported that "the city of New Orleans owes the school board for the principal of school taxes collected and not paid over from the years 1871 to 1878, both inclusive, the amount of $23,180.03," and that the city was liable for interest upon said amount. The circuit court decreed: "That the city of New Orleans, trustee of the special school taxes levied and collected for the years 1871 to 1878, inclusive, be condemned to pay plaintiff and interveners the said taxes, received and collected by her, as follows: $71,938.78," being the full amount of the collections as found by the master, with interest. The judgment of the circuit court was, with some modifications as to interest, affirmed. In the opinion the chief justice says: "The school taxes collected were held in trust by the city, and, as the school board declined to require an accounting, these creditors, whose claims were payable out of the taxes, were entitled to the interposition of a court of equity to reach the fund. The suggestion of want of privity between complainants and the city, as defeating the jurisdiction, is without merit. Nor is the defense of the statute of limitations well founded. * * * As between the city and the school board, the city did not hold these collections in her own right. The possession of the one was the possession of the other. The possession of the city was precarious, and not *animo domini;* and being trustee she could not acquire the trust fund by lapse of time. There was no adverse possession in repudiation of the fiduciary relation."

The supreme court of Kansas, during the present year, had under consideration a very similar case. *City of Osawatomie v. Board of Commissioners,* 96 Pac. (Kan.) 670. In that case the city brought an action against Miami county, alleging that for a period of some 15 years the county had retained for its own benefit a part of the money collected upon taxes levied by the city, especially with respect to that portion paid as interest by delinquents. The petition asked an accounting and judgment for the amount found due. The county moved to require the plaintiff to state separately its causes of action, upon the theory that an independent right of recovery accrued upon the failure to pay the amount due at each quarterly distribution. The motion was sustained, and an amended petition filed containing 28 distinct counts. A demurrer was then sustained as to all of the counts based upon transactions that took place more than three years before the commencement of the action, upon the ground that the statute of limitations was a bar. The city prosecuted error. The judgment was reversed and the case remanded, with instructions to overrule the demurrer. The court very fully discusses the statute of limitations as applied to actions of the character under consideration, and in the course of the opinion say: "Here the tax has been paid by the property owners, but its proper distribution is prevented by the misconduct of one of the agencies which the law has provided for that purpose. True mandamus would doubtless lie against the county treasurer to compel a proper application of the funds on hand, but, if the money collected for the city has been diverted to the use of the county, the present action, which is in effect for an accounting, seems to be an appropriate, if not the only adequate, remedy. *Board of Education v. Spencer,* 52 Kan. 574. The distribution is not required or expected to be made in the very moneys received. The matter is largely one of bookkeeping. Although the county may have misappropriated the city's money and thereby obliged the latter

to sue for its recovery, the action is essentially to compel the performance of a public duty, and not to enforce a private contract. * * * The present controversy involves no element of private contract. It does not concern the vindication of any private right. It is between public officers or public bodies with respect to the performance of a public duty, in which the people of the state at large have at least an indirect interest. It is not affected by mere general provisions of the statute, and no statutory limitation is made to apply to it either in express terms or by necessary implication." The opinion also quotes from *State v. City of Columbia*, 52 S. W. (Tenn. Ch. App.) 511, as follows: "These statutes have reference only to suits or proceedings to collect taxes from the taxpayer, and do not apply to suits against persons who may get the revenue of the state in their possession, and who are by such suit called upon to restore the same to the state. And it is immaterial whether we view the city of Columbia as one who has converted the state's funds to its own use, or as one who holds a fund on which the state has a lien for its taxes, and refuses to surrender it to the state, or as a person charged by law with collecting the state's funds of the character here involved, and who, having collected, refuses to account for and pay over the fund to the state. The result is the same in either view, so far as concerns the statute of limitations. They do not apply in either event." While it is true that in the Tennessee case the state was a party, the reasoning of the court is entirely applicable to the case at bar.

3. It is contended by defendant that there has been a misjoinder of parties; that under section 76 of the road law it was made the duty of the county treasurer to pay the one-half of the road fund collected to the overseer of the road district from which it was collected; but we think this contention is without merit. The plaintiff and defendant in this suit are the real parties in interest. The moneys payable to the city as a road district would prop-

erly go into plaintiff's treasury, and not to the street commissioner, and would be expended under the direction of the city council. There was no necessity for joining the county treasurer in this action, for the reason that the pleadings admit that the moneys collected by the county upon the property within the limits of plaintiff city had been transferred by the county to its general fund. The county having appropriated the money to its own use by transferring it to its general fund thereby became liable to the plaintiff for the amount so appropriated, and could be proceeded against directly, regardless of the fact that the county treasurer and his bondsmen may also have been liable therefor.

4. A further contention is made that the judgment is not sustained by the evidence. This contention must also fail. While the answer denies that the county had collected the amounts alleged by plaintiff in its petition, it admits that none of the moneys which were collected was ever paid over to the plaintiff, and that all of the moneys which had not been expended by the county upon the county roads had been transferred to the general fund. The evidence introduced by plaintiff as to the amount which the county had collected was entirely satisfactory to the district court, and fully satisfies us that the county had collected the amounts for which the district court gave judgment.

We find no error in the record, and recommend that the judgment of the district court be affirmed.

CALKINS and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.