CITY OF ALBION, APPELLEE, V. BOONE COUNTY, APPELLANT.

FILED OCTOBER 17, 1913. No. 17,218.

1. **Highways: ROAD DISTRICTS: CITIES.** Cities of the second class and villages were road districts within the meaning of section 76 of the road law as it existed prior to the amendment of 1901.

2. **Constitutional Law: TAXATION: ROAD FUND.** The power conferred upon a county to raise a road fund by taxation is not in violation of section 7, art. IX of the constitution, but is a political power, and the application of such fund, when collected, is clearly within the power of the legislature.

3. **Highways: ROAD FUND: CLAIMS AGAINST COUNTIES: POWER TO COMPROMISE.** When a county has collected money for the road fund upon property of a city or village, one-half of such money belongs to the city or village, and the officers of the city or village have no power to compromise the right to such money. *State v. Bisping*, 89 Neb. 100.

4. ————: ————: COUNTY A TRUSTEE: LACHES. In such a case, as between the county and city or village, the county does not hold such collections in its own right, but the possession of the one is the possession of the other. The possession of the county is precarious, and not *animo domini;* and, being trustee, it cannot acquire the trust fund by lapse of time, but is charged with the continuing duty to pay the same over to such city or village. *City of Chadron v. Dawes County*, 82 Neb. 614.

5. ————: ————: ————: ————. Nor will the failure of the city or village to demand payment of its portion of said road fund for a series of years, either with or without knowledge on the part of the officers of the city or village of the fact that the county is using all of such fund upon the county roads, constitute laches on the part of such city or village.

APPEAL from the district court for Boone county: JAMES R. HANNA, JUDGE. *Affirmed.*

*Jesse L. Root, O. M. Needham, W. J. Donahue* and *Albert & Wagner*, for appellant.

*John J. Sullivan, F. J. Mack* and *C. E. Spear, contra.*

FAWCETT, J.

From a judgment of the district court for Boone county,

in favor of the plaintiff, a city of the second class, for one-half of the road tax levied and collected by the defendant county upon the taxable property within the limits of plaintiff city, during the years 1883 to 1906, inclusive, except the year 1902, defendant appeals.

A plea of *res judicata* is interposed as to all of the years prior to and including 1902. The allegations in support of this plea are that in 1904 plaintiff filed a claim with the county for certain sums which it claimed were then due as plaintiff's share of the county road fund tax; that on October 4, 1904, this claim was adjudicated by allowing the same in part and disallowing it as to the other part; that the amount allowed was $362.22, which it is alleged plaintiff accepted in full and complete settlement of all such taxes due, and that it was understood and agreed between plaintiff and defendant that such sum was to be and was accepted as such full settlement. It is further alleged that no appeal was ever taken from that adjudication by the board. The reply admits that no appeal was taken, but denies that there was any adjudication by the board of any portion of its claim except the specific item for the year 1902; alleges that the claim filed by plaintiff at that time was itemized for the years 1900, 1901 and 1902; that the board took no action whatever as to the claims of 1900 and 1901; that it indorsed on plaintiff's claim the word "allowed" after the item as to the year 1902, and as to the years 1900 and 1901 indorsed the claim as follows: "No action taken on claims for 1900 and 1901." The plea of *res judicata* must fail for two reasons: (1) The record sustains the allegations of the reply as to the action of the board October 4, 1904, with respect to the claim for the years 1900 and 1901. (2) Even if the officers of plaintiff city had attempted to compromise the city's claim against the county by accepting payment of one year as a full settlement of all preceding years, such attempt would have been in excess of their powers and therefore futile. *State v. Bisping,* 89 Neb. 100.

It is urged that section 7, art. IX of the constitution, is a bar to plaintiff's right to maintain this action for any part of the road fund tax levied by the county authorities. This section reads: "The legislature shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes." We are unable to see any application of this section of the constitution to the case at bar. The legislature has not anywhere in the road law under consideration attempted to "impose taxes upon municipal corporations." It has simply directed the manner of distribution of the taxes levied by the duly constituted county authorities. This it had a perfect right to do. The power conferred upon a county to raise a road fund by taxation is a political power, and its application, when collected, is clearly within the power of the legislature.

By the seventh assignment it is urged that plaintiff's action is barred by the statute of limitations. This assignment is not seriously contended for in the brief, the main stress upon this branch of the case being laid upon the eighth assignment, that upon the undisputed facts of the case plaintiff has been guilty of such laches that this action ought not to be maintained. These two assignments must both be disposed of adversely to plaintiff on the authority of *City of Chadron v. Dawes County*, 82 Neb. 614, and the authorities there cited.

The remaining assignments are that plaintiff's petition does not state facts sufficient to constitute a cause of action; that the finding and judgment of the district court are not sustained by sufficient evidence, and that they are contrary to law. If the assignment that the judgment is contrary to law fails, the other assignments must also fail. This brings us to the controlling question in the case: Does the law, viz., the statutes of this state, sustain the judgment? In deciding this point, we need not do more than consider section 76 of the road law as it has existed from 1881 to the time of the commencement of this action. So far as this section has stood from 1901 to the

present time, it is ruled by *City of Chadron v. Dawes County, supra.* That case has since been followed in *City of Crawford v. Darrow,* 87 Neb. 494, and *State v. Bisping, supra.* We are satisfied with the holding in those cases and adhere to them.

With reference to section 76 (Comp. St. 1899, ch. 78) as it stood prior to 1901, we might well rest our decision upon *Libby v. State,* 59 Neb. 264, which was decided November 9, 1899. In the opinion in that case (p. 268) it was said by SULLIVAN, J.: "In an earnest endeavor to discover the will of the lawmaking body, we have followed the learned counsel for respondent into a jungle of enactments, ancient and modern, among which the mind loses itself and can find no way out. The truth of the matter is that no very tangible evidence of the legislative purpose touching the disposition of money like that here in dispute is anywhere discernible. And yet we think there is enough to warrant us in holding that section 76 of the road law is applicable to incorporated municipalities, and that they are to be regarded as road districts within the meaning of that section." Notwithstanding the warning here sounded by the learned judge, we have again followed counsel into this "jungle of enactments, ancient and modern," endeavoring, while in this jungle, to keep the mind from losing itself, and to find a clear way out. The difference between section 76 prior and subsequent to 1901 is that prior thereto the section did not specifically include cities of the second class and villages within its requirement that the county commissioners, after levying the same rate of road tax on property within any incorporated city, might retain one-half of the tax so levied and collected and should pay the other half to the council of said cities to be used for road purposes. It is now argued that, there being no statutory provision prior to 1901 requiring the county board to pay over to cities of the second class and villages one-half of the tax collected from property within the corporate limits of such city or village, plaintiff cannot maintain this action for the taxes

35

so collected for the years 1883 to 1899, inclusive. We were quite strongly impressed with the argument of counsel for defendant at the bar upon this point, and in our tentative consultation at the close of the argument we were rather inclined to the belief that the contention would have to be sustained; but upon more careful consideration of the question, and after a painstaking examination of the statutes for each year from 1881 to 1899, inclusive, we are constrained to hold that defendant's contention upon this point must also fail. Section 76 as it stood in 1881 (Comp. St. 1881, ch. 78) provides: "In counties not under township organization, one-half of all the moneys paid into the county treasury in discharge of road tax shall constitute a county road fund, which shall be at the disposal of the county commissioners for the general benefit of the county, for road purposes; the other half of all moneys paid into the county treasury in discharge of road tax, and all money paid in discharge of labor tax, shall constitute a district road fund, which shall be paid by the county treasurer to the overseer of the road district from which it was collected, and expended by him only for the following purposes: *First.* For the construction and repair of bridges and culverts, and making fire-guards along the line of roads. *Second.* For the payment of damages of the right of any public road. *Third.* For the payment of wages of overseers, and for the expense of procuring the necessary guide-boards. *Fourth.* For the payment of wages of commissioners of roads, surveyor, chainmen, and other persons engaged in locating or altering any county road, if the road be finally established or altered as hereinbefore provided. *Fifth.* For work and repairs upon road." The section stood thus until 1891, when, without other change, there was added to it this proviso: *"Provided,* that the county commissioners of counties not under township organization may levy the same rate of road tax upon the property within any incorporated city of the metropolitan class and cities of the first class as is levied upon the property situated within the several

road districts, and all moneys paid into the county treasury in discharge of road tax levied upon property within the incorporate limits of any such city shall constitute a part of the general road fund of the county, and be subject to the disposal of the county commissioners for the general benefit of the county and city, one-half of which shall go to the county for road purposes and one-half to the council of said cities to be used for road purposes." The section stood thus until 1899, when the concluding clause of the proviso was changed so as to read: "And one-half to the council of said cities to be used under the direction and control of the board of park commissioners of such cities in the construction and improvements of roadways in the system of parks, parkways and boulevards of such cities." At the next session of the legislature the proviso was again amended so as to include cities of the second class and villages with cities of the metropolitan and first class, and by providing that one-half of the tax levied upon property within any incorporated city of any of the classes named "shall go to the county for road purposes and one-half to the council of said cities to be used for road purposes." The section stood thus until 1905 when it was again amended. This amendment, however, did not affect cities of the second class and villages, the provision as to them remaining the same as it was fixed in 1901, the only change in 1905 being as to cities of the metropolitan class, as to which the one-half is to be used under the direction and control of the park commissioners. In 1907 the section was again amended, and portions of the section as it originally stood were eliminated, but still providing that one-half of all such taxes levied upon property within any of the cities named should, when collected, be paid to the city or village where levied. And so the section has remained ever since.

A careful reading of this section, as it appears from time to time through all of the years named, shows that it was always the legislative intent that only one-half of the moneys paid into the county treasury in discharge of road

taxes should constitute a county road fund which should be at the disposal of the county commissioners, and that as to the other half of the moneys so collected it was always the intent of the legislature that such portion should be used by the proper officers and expended for the benefit of the particular district from which it was collected. The legislative intent being thus clearly ascertainable, it seems to us to be immaterial that in some of the years the section required the portion of the tax collected within any particular district to be paid to the overseer of that district, while in others it provided that it should be paid to the council of an incorporated city. It is clear that the legislature never intended that the county commissioners could levy a tax upon all property in the county, and, when that tax was paid in, use the whole of it for any particular roads or bridges in the county it saw fit, thus compelling certain districts of the county to pay road taxes upon the property within those districts without having any voice in the distribution or any benefit from the use of any portion of it. The justice of the legislative intent is apparent. All of the county roads in a county are maintained for the benefit of the citizens of the entire county, and the citizens of the entire county should contribute something towards the support of all of the roads in the county; and the legislature in its wisdom concluded that it would be just to take one-half of all the road taxes collected within the county and place that fund in the hands of the county commissioners "as a county road fund," to be used "for the general benefit of the county, for road purposes." Having done that, the legislature felt that, as to the other half of the money paid, the citizens who were required to pay it should be entitled to have that portion of the tax used in their own locality. That this is eminently just, when applied to incorporated cities and villages, is still more apparent when we consider that cities and villages, if the portion which they receive from the road fund is not sufficient to keep their streets and alleys in a reasonably safe condition for travel, not only

by residents of the city but by the inhabitants of the county generally, must raise such additional sums as may be necessary to keep them in such condition; and this additional fund they must raise by a tax on property within their corporate limits. So that, while incorporated cities are contributing one-half of the road tax levied upon their property to the county, for the benefit of the roads and bridges, they receive nothing from the county except the one-half of the tax levied upon their own property with which to keep their streets and alleys in good condition, and must themselves raise such additional sums as may be required for such purpose.

This brings us to a consideration of *Libby v. State, supra,* in which, after considering the condition of the road law as it had existed prior thereto, we held that "incorporated municipalities are road districts within the meaning of section 76 of the road law." The decision in that case was handed down, it must be remembered, prior to the amendment of 1901, at a time when cities of the second class and villages were not specifically included within section 76 of the road law. When we decided *City of Chadron v. Dawes County, supra,* we considered *Libby v. State,* and particularly that portion of the decision which held that incorporated municipalities are road districts within the meaning of section 76, and held that, "considering the question as a new one, we are constrained to reach the same determination." In the light of these cases, which we still adhere to, we hold that during all of the years in controversy here plaintiff was entitled to have paid over to it one-half of all of the road tax levied and collected upon property within its corporate limits.

The judgment of the district court being in harmony with this holding, it is

AFFIRMED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.