TERRELL, Justice.
This is a mandamus proceeding brought by the Board of County Commissioners of Glades County against Ray E. Green, as Comptroller, of the State of Florida, and the Board of County Commissioners of Palm Beach County.
There is no controversy about the facts in this case. It appears from the petition that the legislature enacted Chapter 10596, Special Acts of 1925, which act purported to change the boundary between Glades County and Palm Beach County so as to enlarge Glades County by 160.88 square miles. This act was not included in the Compiled General Laws of 1927, nor was any description of Glades and Palm Beach Counties contained in the Compiled General Laws as amended.
*322 In 1931, the legislature enacted Chapter 156S9, Laws of Florida, imposing a fourth, fifth and sixth cent tax, otherwise called the second gasoline tax. The said act provided that the second gasoline tax be distributed to the several counties of the state pursuant to the provisions of Section 16, Article IX of the Constitution, F.S.A., and § 208.11, Florida Statutes, F.S.A., the formula for distribution therein being: One-third of the said tax to said counties on the basis of area; one-third on the basis of population, and one-third on the basis of the contribution made by said counties to the state road system prior to July 1, 1931. In 1931 when the area of the several counties of the state was computed for the purpose of determining the distribution of the said tax based on area, the Compiled General Laws of Florida, Acts of 1927, were prima facie evidence of the description of said counties and their boundaries. The description of Palm Beach County and Glades County as contained in the Compiled General Laws, Acts of 1927, was used in computing the area of the respective counties, which area was certified to the comptroller. The area so computed in 1931 for each of said counties has been used as a basis for distributing the second gas tax and other motor fuels taxes from that date to the present.
At no time from 1931 when the areas of Glades and Palm Beach Counties were certified to the comptroller, until the petitioners filed their petition in this proceeding, did Glades County or any official thereof question the computation of the area of Glades County or contend that there had been a valid change of the boundaries of Glades County by the 1025 special act.
It also appears that revenue bonds have been issued by Palm Beach County, or special road and bridge districts therein, by the Florida Development Commission, the State Board of Administration and the Florida State Improvement Commission pledging as security for the payment of said bonds the fifth and sixth cents of the second gasoline tax or the 80% surplus of the fifth and sixth cents of the gasoline tax. The area of Palm Beach County, as computed in 1931, was used by the State Board of Administration to estimate the gasoline tax to accrue and be available for servicing of these bond issues in the future which representation was made to the purchasers of the bonds. It follows that there are now six bond issues of the Florida Development Commission, the State Board of Administration, or the special road and bridge districts of the county that are outstanding and payable from the 80% surplus gasoline tax or the fifth and sixth cents of the second gasoline tax. At no time prior to the issuance and sale of said bonds now outstanding did Glades County or any official thereof make any complaint regarding the representation as to the area of Palm Beach County or contend that Chapter 10596, Special Acts of 1925, validly changed the boundaries of said counties.
Petitioners move this court for an alternative writ of mandamus requiring Ray E. Green, as comptroller, to forthwith allocate and make distribution of the proceeds of the one-third part of the aforesaid gasoline and motor fuel taxes as between Glades County and respondent Palm Beach County based on the inclusion within the area of Glades County of the aforesaid 160.88 square miles of Lake Okeechobee now being erroneously included in the area of Palm Beach County beginning with the monthly allocation of said taxes between said counties for the month of June 1962 or to show cause why he refuses to do so.
The parties are not in accord as to some of the questions raised by the answer and return to the petition and the alternative writ. The real purpose of this suit is to require Ray E. Green, as comptroller, to forthwith allocate and distribute one-third part of the second gasoline tax and motor fuel taxes as between Glades County and Palm Beach County, based on the inclusion within the area of Glades County of the 160.88 square miles of Lake Okeechobee now being erroneously included in the area of Palm Beach County beginning with the *323 monthly allocation of said taxes as between said counties for the month of June 1962.
When the pleadings and purpose of the suit are read together, petitioners offer the following as the first question: Are the present boundaries of Glades County and Palm Beach County, as set forth in §§ 7.22 and 7.50, Florida Statutes 1961, F.S.A. (which have been carried forward from the same sections in Florida Statutes 1941), invalid and unconstitutional in so far as they define the boundaries of Glades County as including a portion of Lake Okeechobee, because this change in boundaries was originally set forth in Chapter 10596, Laws of Florida, Acts of 1925, which was a special act ?
A great deal is said in the briefs of respondents about the unconstitutionality of Chapter 10596, Acts of 1925. This challenge is predicated on the theory that Chapter 10596 changed the boundary lines of Glades and Palm Beach Counties which, it is contended, cannot be done by local law. Palm Beach County also contends that since the change in boundaries of the two counties defined in Chapter 10596, Acts of 1925, was not included in the Compiled General Laws of 1927, the comptroller in allocating the gasoline taxes in 1931 and thereafter between the two counties was bound by Section 16, Article IX of the Florida Constitution, and § 208.11, Florida Statutes, F.S.A., later included in the Compiled General Laws of 1927.
Petitioners contend that allocation of the second gas tax by the formula in Section 16, Article IX, Florida Constitution, and § 208.11, Florida Statutes, F.S.A., was not a computation to be made once and for all in 1931, except as to the factor of the county’s aggregate contribution to state roads up to and including the year 1931, but that under the provisions of the governing constitutional and statutory provisions, such allocation and computation is to be made anew at the end of each month beginning with the effective date of the constitutional and statutory provisions in the year 1931 and continuing for the period of fifty years as provided in Section 16, Article IX of the Constitution.
Section 16, Article IX of the Florida Constitution, as pertinent, is as follows:
“(a) That beginning January 1st 1943, and for fifty (50) years thereafter, the proceeds of two (2‡) cents per gallon of the total tax levied by State law upon gasoline and other like products of petroleum, now known as the Second Gas Tax, and upon other fuels used to propel motor vehicles, shall as collected be placed monthly in the 'State Roads Distribution Fund’ in the State Treasury and divided into three (3) equal parts which shall be distributed monthly among the several counties as follows: one part according to area, one part according to population, and one part according to the counties’ contributions to the cost of State road construction in the ratio of distribution as provided in Chapter 15659, Laws of Florida, Acts of 1931, * *
Section 208.11(2), Florida Statutes, F.S. A., in so far as is pertinent, is as follows:
“ * * * The comptroller shall each month draw his order on the treasurer of the state for the full net amount of moneys then with the state treasury in said ‘state roads distribution fund’, specifying the counties to which said moneys shall be paid, and the amount to be paid to each county, respectively. * * * The monthly schedule of installments to be so paid to or for such counties shall be computed, determined and paid out monthly in the following ratio, to-wit: * *
Section 208.44(3), Florida Statutes, F.S. A., providing for the seventh cent gasoline tax in so far as pertinent, is as follows :
“* * * The comptroller, after deducting his expenses of collection, shall *324 monthly apply to said monthly collections the same ratio of distribution by which the two cents gasoline tax, known as the second gas tax, is prorated among the several counties under § 16(a), Art. IX of the state constitution. The comptroller shall thereupon, monthly, remit the said respective distributive shares of each county as follows: Eighty per cent to the state road department * * *. * * * ; and twenty per cent to the board of county commissioners of such county * *
After examination of these provisions of the law, it seems clear that the distribution of the gas tax funds is in the hands of tlie comptroller and that such distribution be done monthly. See also Advisory Opinion to the Governor, 152 Fla. 356, 11 So.2d 580, 582, where the foregoing doctrine was approved and wherein we said that the second gas tax “should be distributed to the counties by warrant drawn by the Comptroller and countersigned by the Governor, as provided by Section 24, Article IV of the Constitution.”
In view of these provisions of the law, petitioners contend that regardless of what may have been the law defining the boundaries of Glades and Palm Beach Counties prior to the effective date of the Florida Statutes of 1941, said boundaries were fixed by the 1941 statutes, which were a revision of the attorney general rather than a modification of existing laws. The said 1941 statutes were general laws and the comptroller was governed by them in allocating the second gasoline tax.
The second question proposed by petitioners and the first question proposed by respondents are based on laches or es-toppel. Petitioners state the question as follows:
“Is the petitioner, 'Glades County, barred by laches because of its failure to seek a recomputation of the area factor in the gas tax distribution formula set forth in Article IX, Section 16, of the Florida Constitution and in Section 208.11, Florida Statutes, based on the change in boundaries in Glades and Palm Beach Counties made by the Special Act of 1925, after having failed to seek a recomputation on such basis for a period of thirty-one years?”
Petitioners point out that they only ask that the comptroller commence the revised allocation of the gas tax with the month of June 1962. In other words, petitioners seek relief as to taxes collected in the future and express no desire for relief as to taxes collected before the commencement of this action. Since this is their claim for relief, they contend that the doctrine of laches has no application and that the cases relied on by respondents to support their contention are not applicable.
There is language in some of the pleadings or briefs that this proceeding is one to compel Palm Beach County or other agency to refund to petitioner, Glades County, tax monies diverted from Glades County over a period of thirty-one years last past for failure to include a portion of Lake Okeechobee in computing the area of Glades County. To support this contention, Pippin v. State ex rel. Town of Blountstown, 73 Fla. 363, 74 So. 653; City of Port Tampa v. Hillsborough County, 102 Fla. 968, 136 So. 723; City of Chadron v. Dawes County, 82 Neb. 614, 118 N.W. 469, and City of Albion v. Boone County, 94 Neb. 494, 143 N.W. 749, and others are relied on to support this contention.
There is no doubt that some of these cases show that the use of mandamus will be denied to recover on stale claims where the delay has been unreasonable and no good reason is given for it. In City of Stuart v. Green, 156 Fla. 551, 23 So.2d 831, we held that laches would not be imputed to a municipal corporation when acting in a governmental capacity. A study of the cases cited and others reveal that laches may not always be raised to bar old claims. The facts of the particular claim *325 generally control. Since petitioners are only seeking a portion of future allocations we think equitable considerations will control and that the doctrine of laches has no place in this case.
The petitioners and respondents agree that the third question presented may be stated as follows: “Are the State Road Department of Florida and the State Board of Administration of Florida necessary parties to this proceeding?”
The respondent-comptroller contends that the monthly allocation of gasoline taxes as between the counties is made by the comptroller pursuant to a certificate of the chairman and auditor of the state road department, consequently the state road department or its chairman and auditor should be made parties to the cause rather than the comptroller.
The respondent-Palm Beach County contends that the state board of administration makes the monthly distribution of the second gasoline tax monies between the counties rather than the comptroller, consequently the state board of administration should be made a party respondent.
Section 208.11, Florida Statutes, F.S.A., and Section 16, Article IX of the Constitution, contain the answer to this question. These require the comptroller to make the allocation of the gasoline tax funds to the counties. The state board of administration is then required to administer said funds as distributed by the comptroller for the payment of principal and interest on present and future bonds. The state road department also receives 80% of the counties’ share of the fifth and sixth cents of the gasoline tax after the needs of debt service are met. The state road department also receives from the comptroller 80% of the seventh cent gasoline tax as provided by § 208.44, Florida Statutes, F.S.A. As to whether the gasoline tax is allocated to Glades, Palm Beach or some other county is not material to the state road department or the state board of administration. The duty of these boards is to administer the funds allocated to them for the different counties. The state board of administration uses the funds so allocated for the debt service and the state road department administers them for road construction.
In subsection (a), Section 16, Article IX of the Constitution, it is provided that the proceeds of the fifth and sixth cents of the second gasoline tax shall be allocated monthly to the state treasury for the state road distribution fund and divided into three equal parts, then distributed monthly among the several counties, one-third according to area, one-third according to population and one-third according to the county’s contribution to state roads. "Such funds so distributed shall be administered by the state board of administration, as hereinafter provided.”
 When these and other provisions of the governing law, particularly § 208.11 (1), Florida Statutes, F.S.A., are read together, we find no reason to make the state road department or the state board of administration, or any of their agents, parties to this cause. The comptroller has sole responsibility for collecting, allocating and distributing the funds.
The fourth question raised is stated in the brief of petitioners as follows:
“Is the petitioner, Glades County, es-topped to seek a recomputation of the area factor in the distribution of the gas tax monies by reason of the fact that Palm Beach County presently has outstanding six bond issues which are being retired from Palm Beach County’s share of the gas tax monies and which were issued during the period of thirty-one years in which Glades County failed to seek a recomputation of the area factor ?”
It is alleged in the answer and return of .respondents that Palm Beach County has at present six bond issues promulgated by agencies or subdivisions of the county which are being serviced by or with gaso *326 line tax monies administered by the state board of administration. It is urged that if any portion of the monies now allocated to Palm Beach County is diverted to Glades County, the security for said bonds will be impaired, good faith will be broken with the creditors oor purchasers of said bonds and great confusion will follow.
Respondent does not furnish the court with the amounts of these outstanding bond issues or the amounts required annually to service them or how much money would be diverted from Palm Beach County annually if the prayer of their petition is granted. Neither is the court advised what the damage to Palm Beach County would be to divert or allocate sufficient gasoline tax funds to satisfy the demands of the petition herein.
Petitioners in their brief positively assert that available state board of administration figures clearly show Palm Beach County will continue to receive directly, or from monies paid to the state .road department for its benefit, substantial sums in excess of its requirements for debt service of the six outstanding bond issues mentioned herein, even after the proposed area reduction to Palm Beach County’s share of the gasoline tax revenue becomes effective. From the uncontradict-ed figures contained in petitioners' brief it is obvious that the granting of the relief prayed for in this proceeding is no threat to the financial integrity of the bond issues of Palm Beach County in the past or in the future. Said figures not being denied by the respondents and having been taken from authentic sources are presumed to be true. Since this is the case, right and justice require, and it is hereby ordered, that in the future, that is to say, beginning with the month of June, 1962, the comptroller be ordered to make future allocations of the gasoline tax monies as between Glades and Palm Beach Counties based on their actual area since it is not shown or contended that such allocation will in any way jeopardize the present bond obligations of Palm Beach County. The peremptory writ is awarded.
It is so ordered.
ROBERTS, C. J., and THOMAS, THORNAL, O’CONNELL, CALDWELL and SEBRING (Ret.), JJ., concur.